[L. A. No. 16139. In Bank.—Sept. 3, 1941.]

JOHN F. HORTON, Appellant, v. CALLIE ELLA
HORTON, Respondent.

Talbot & Hornaday and Franklin P. Bull for Appellant.

Joseph W. Ryan and Harvey H. Myers for Respondent.

CURTIS, J.—In this action in equity to set aside a decree for separate maintenance theretofore entered in an independent action between the parties hereto, defendant prevailed, and plaintiff brings this appeal upon the judgment roll. For convenience and brevity in this opinion John F. Horton, the plaintiff and appellant herein, will be called the husband, and Callie Ella Horton, the defendant and respondent herein, will be designated as the wife.

The essential facts giving rise to the present controversy are as follows: On October 6, 1930, the wife, as plaintiff,

brought the first suit for separate maintenance. She did not specify any amount, but requested the court to allow her "a reasonable sum" for support, as well as for attorney fees and costs. The wife did not ask for a divorce in that complaint. It having appeared to the court that the husband, as defendant, was duly served with process and that his default for failure to appear or answer had been entered on October 22, 1930, an "Interlocutory Judgment of Divorce" was entered on December 2, 1930, awarding the wife $200 per month "for separate maintenance and support," $400 for attorney fees, $10 for costs of suit, and certain property described in the complaint. About three months later the husband filed a motion to set aside the purported interlocutory decree of divorce entered against him and for permission to answer the complaint, on the ground that he had not been served with summons and that he had a good defense. On March 4, 1931, the court, having heard the matter upon affidavits, vacated the interlocutory decree, as the husband asked, but denied his application to set aside the default. On May 8, 1931, the wife procured the court to render a "Judgment and Decree for Separate Maintenance" *nunc pro tunc* as of the date of the original entry of the divorce decree on December 2, 1930. The later decree contained precisely the same provisions and its language was identical in every respect with that of the earlier decree, except that the amended judgment eliminated entirely all reference to the interlocutory decree of divorce. On May 29, 1931, the husband again moved the court to set aside his default and to vacate the *nunc pro tunc* judgment, and after full presentation and argument of the matter by counsel for both the husband and the wife, the court on June 3, 1931, denied the husband's motion.

On August 17, 1931, the husband brought the present action in equity to set aside the modified judgment in the aforementioned separate maintenance suit. Three causes of action were stated: (1) that the judgment for separate maintenance awarded relief in excess of the demand in the complaint; (2) that the judgment was obtained by fraud and misrepresentation practiced by the wife upon the court in the absence of the husband; and (3) that the court, after having entered the interlocutory decree of divorce and refused the husband's motion to set aside the default, was without jurisdiction or power to correct its judgment by the *nunc pro tunc* amend-

ment. To this complaint the wife, as defendant, interposed a demurrer, which was overruled. Then on October 14, 1931, she filed an answer denying specifically the above-mentioned three grounds on which the husband predicated his claim to relief, and upon the issues thus framed the wife on August 11, 1936, was awarded judgment, from which the husband now appeals.

In his attack on the validity of the judgment for separate maintenance the husband, as appellant, presents for our consideration the same three aforementioned contentions that he advanced at the trial in the lower court, and the question to be determined on this appeal is whether the judgment in controversy is vulnerable to any of these objections and therefore void. We shall discuss these arguments in the order in which they appear in the pleadings, as above noted.

It is first insisted by the husband that the judgment for separate maintenance is void for the reason that the relief therein granted was in excess of that demanded in the complaint. The claim is based on the fact that the complaint did not ask for property or for any designated amount for attorney fees, or for any specified sum for maintenance, and that the judgment included provisions awarding the wife $200 per month for support, $400 for attorney fees and certain property. This decree is alleged to be in contravention of the following provision of section 580 of the Code of Civil Procedure: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint." The husband also cites numerous decisions in support of his contention, such as *Lang* v. *Lang*, 182 Cal. 765 [190 Pac. 181]; *Benton* v. *Benton*, 122 Cal. 395 [55 Pac. 152]; *Brooks* v. *Forington*, 117 Cal. 219 [48 Pac. 1073]; *Von Der Kuhlen* v. *Hegel*, 51 Cal. App. 416 [196 Pac. 913]; and *Bennett* v. *Bennett*, 50 Cal. App. 48 [194 Pac. 503]. Examination of these cases reveals that they were concerned with awards referable to matters which the respective complaints either failed entirely to mention or included in limited terms narrower in range than the pertinent provisions of the decree. He also places special reliance upon *Staacke* v. *Bell*, 125 Cal. 309 [57 Pac. 1012], for its holding that the prayer for general relief does not enlarge the power of the court to grant relief not specifically demanded against the defaulting de-

fendant. While all these cases correctly state the rule that in such circumstances the allowance of relief beyond the scope of the pleading is a nullity, for a defendant has the right to assume that the judgment which would follow a default on his part would embrace only the issues presented by the complaint and the relief therein asked, these authorities are not in point here because the wife's pleading amply sustains the amended decree as rendered.

The wife's complaint expressly put in issue the reasonableness of the sum necessary for support and maintenance by the allegation that the husband was "capable of and actually earning in excess of $500.00 per month" and the itemization of the community property, described in considerable detail as to kind, location and value. These averments in conjunction with the specific demands of the prayer for "a reasonable sum" for support and maintenance, for "a reasonable sum" for attorney fees and costs, and for an order restraining dissipation of the assets by the husband were sufficient to notify him that the disposition of the community property and his ability to make the payments requested were issuable facts. On this basis the court, after determination of the amount necessary for her maintenance, awarded to the wife $200 per month, together with the family home and one automobile as her proper share of the listed community property measured in terms of monetary equivalence. At this point it should be noted that the court also by its decree confirmed in the husband "all right, title and interest of the community in all other property," which, as itemized, included stocks, bonds and business holdings of considerable value. ▆ In such an action for separate maintenance, the purpose of which is to enforce specifically the husband's obligation to furnish support to his wife, it is well settled that the amount to be granted is largely within the discretion of the trial court, subject to revision only in case of abuse, which does not appear to be present here. ▆ Accordingly, it is our opinion that the judgment awarding to the wife $200 per month and the above-mentioned property, as well as $400 for attorney fees, was directly responsive to the wife's prayer for reasonable sums for support and maintenance, attorney fees and costs, and as so framed this judgment cannot be said to transgress the limitation of section 580 of the Code of Civil Procedure.

It is next contended by the husband that the judgment for separate maintenance is void because "obtained by fraud and misrepresentation practiced by defendant wife upon the Court." An examination of the authorities upon the question of what fraud will warrant the aid of equity discloses that only upon proof of *extrinsic* and *collateral* fraud can a plaintiff secure equitable relief from a judgment. A showing of fraud practiced at the hearing of the original action will not suffice. This is characterized as *intrinsic* fraud and since there must be an end to litigation and such fraud was part of the case presented in the former suit, equity will not reopen the matter. (*Pico* v. *Cohn,* 91 Cal. 129, 133 [25 Pac. 970, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336].) In the leading opinion of *United States* v. *Throckmorton,* 98 U. S. 61, 66 [25 L, Ed. 93], the court in an extended discussion of the rationale of this almost universally accepted rule based upon the distinguishing features of these two types of fraud, concluded that equitable aid will be granted where it appears that "by some fraud *practiced directly upon the party seeking relief* against the judgment or decree, that party has been prevented from presenting *all* of his case to the court." [Italics added.] Thus, the question to be decided is whether the husband has stated a case of extrinsic rather than intrinsic fraud.

The husband avers here that in the original complaint for separate maintenance the wife made fraudulent allegations respecting his financial condition and earning capacity, and that by reason of such representations the court was induced to award her the $200 per month and part of the community property for maintenance. From this statement it is apparent that the charged fraud and misrepresentation of the wife did not relate to matters collateral to the original proceeding, but in fact bore on the precise issues there in controversy. The rule is well settled in this state that mere false allegations by the plaintiff, in her pleading do not constitute such fraud as justifies equitable interference since the truth or falsity of the matters alleged is conclusively determined by the judgment, in the absence of some other ground for relief. (*Hanley* v. *Hanley,* 114 Cal. 690 [46 Pac. 736]; *Fealey* v. *Fealey,* 104 Cal. 354 [38 Pac. 49, 43 Am. St. Rep. 111]; *Harvey* v. *Griffiths,* 133 Cal. App. 17 [23 Pac. (2d) 532].) Analogous in principle to the situation prevailing

here was that in the case of *Hanley* v. *Hanley, supra,* where it was said at p. 693 that "it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged instruments or perjured testimony." The allegations of the husband in the present complaint disclose, at best, intrinsic fraud, going to the merits of the first action, and which the husband should have exposed at the original hearing. Instead he permitted a default to be taken against him and so admitted the truth of the material facts averred in the wife's pleading. In this connection it is significant to note that the husband's assertion of not having been served with summons in the separate maintenance suit, a ground urged in support of his aforementioned two motions to vacate the judgment and set aside the default, has been abandoned in this proceeding as a basis for equitable intervention, presumably an acknowledgment by him that such claim lacked merit and that he was not prevented from having his day in court by any conduct attributable to the wife. Under these circumstances the following language from *Harvey* v. *Griffiths, supra,* at pp. 22, 23, is particularly applicable:

"It is immaterial that the judgment which is assailed was procured by default. The defendants in that action had an opportunity to appear and protect their interest. They deliberately waived the right to their day in court by failing to appear and answer the complaint. A default judgment is an estoppel as to all issues necessarily litigated therein and determined thereby exactly like any other judgment provided the court acquired jurisdiction of the parties and subject matter involved in the suit. (*Hutchings* v. *Ebeler & Trout,* 46 Cal. 557; *Strong* v. *Shatto,* 201 Cal. 555 [258 Pac. 71]; 3 Freeman on Judgments, 5th ed., p. 2690, sec. 1296.)"

Since the procuring of a judgment by mere intrinsic fraud will not justify the court in setting it aside, it is plain that the husband has failed to state on this ground a cause of action for equitable interposition.

 This leaves as the only remaining problem the question as to whether the court in the default action had the right to enter a judgment *nunc pro tunc* for separate maintenance in accordance with the pleadings. The husband contends that the court, after having entered the interlocutory decree of divorce and refused his motion to set aside the default, was without jurisdiction or power to correct its judgment by

a *nunc pro tunc* amendment. The difficulty with this contention of the husband is that he mistakes the action of the court in rendering its later judgment. This judgment was not an amendment of its previous judgment. That judgment had been set aside upon motion of the husband. He could not therefore complain of the court's action, which was prompted by his own motion. After the prior judgment was set aside there was nothing for the court to amend. The case was then before the court upon the complaint of the wife and the default of the husband. It was just like any other default action in which the defendant had failed to answer the complaint, and the court in this action proceeded just as it would have done in any ordinary action under like circumstances. No question is raised as to the power of the court to direct the entry of the later judgment *nunc pro tunc* as of the date of the former. The judgment was in our opinion a proper and valid judgment.

The judgment from which this appeal was taken is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.